UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CATHY MINIX, Individually and as Mother and Natural Guardian of S.Z., and S.Z., Individually, )<br>)<br>)<br>) | |
| Plaintiffs ) | |
| ) | |
| vs. ) | CAUSE NO. 1:04-CV-447 RM |
| ) | |
| ANDREW PAZERA, LINDA COMMONS, EVELYN RIDLEY-TURNER, KELLY WHITCOMB, PHIL GIBSON, PAMELA CLINE, DAWN HARRIS, STACI DERDA, OFFICER SHAW, Y.S.S. EURIPIDES PEREZ, JOHN F. BODNER, Y.S.O. SPELLS, Y.S.S. JANEY McCOY, OFFICER STRICKLAND, OFFICER WARD, OFFICER MITCHELL, Y.S.S. AARON MILLS, Y.S.S. WINSTON, Y.S.S. SYLVESTER, SANDRA KYETTA, and INDIANA DEPARTMENT OF CORRECTION, )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants ) | |

OPINION AND ORDER

Steven Zick, now an adult, and his mother Cathy Minix sue for injuries that Mr. Zick suffered while an inmate at the South Bend Juvenile Facility and the Northeast Juvenile Facility in Fort Wayne. Mr. Zick sues under 42 U.S.C. § 1983 for constitutional violations. Mrs. Minix sues in her capacity as Mr. Zick's mother and natural guardian, and sues under Indiana law in her own capacity. The defendants seek summary judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

For the reasons that follow, the court grants the defendants' motion.

I.

Mr. Zick was in custody in 2002 and 2003 as a result of an adjudication of delinquency for theft. In the fall of 2002, when he was held at the South Bend Juvenile Facility, Mr. Zick was jumped and beaten by other offenders as part of what was known as "initiation." At one point, he sustained a black eye and bruising, but no staff at the South Bend Juvenile Facility took any action to protect him or to find out what had happened. Mr. Zick saw bruises on other juvenile detainees at the South Bend Juvenile Facility.

One such beating triggered a seizure-like reaction in Mr. Zick, who began to twitch and foam came from his mouth. Staff were called to help him, but no efforts were taken to protect him, and he was beaten again the next day.

Mr. Zick was raped in 2002 and also saw another detainee being raped. Mr. Zick was put on suicide watch and, at times, did not eat.

Once, in the day room, someone struck Mr. Zick in the head. He fell to the floor and others kicked and stomped on him. South Bend Juvenile Facility staff monitor the day room with four camera monitors. When his nose was bloodied during another beating, Mr. Zick used his shirt to absorb the blood. On another occasion, Mr. Zick's lip was broken open during a beating.

In January 2003, Mr. Zick was beaten again as he returned to his bed from the day room. After someone covered his head, he was punched and beaten with padlock-laden socks. The staff provided him with some medical attention and photographed his injuries.

Mr. Zick feared reporting incidents to the staff, lest he guarantee more beatings by being labeled a snitch. Some staff encouraged the beatings and arranged for juveniles to fight. Some would handcuff one juvenile so other juvenile detainees could beat him; this was called "jumping."

Mr. Zick was transferred from the South Bend Juvenile Facility, first to the Northeast Juvenile Facility, in Fort Wayne, and then to Plainfield. He suffered physical abuse at both of those facilities, too.

Cathy Minix was very concerned about her son while he was incarcerated at the South Bend Juvenile Facility. She saw bruising on his face and upper body, and sought help from the authorities for Mr. Zick. Before the beating with the padlock-filled socks, Mrs. Minix told staff at the South Bend Juvenile Facility about the bruising and that threats were being made on his life. The South Bend Juvenile Facility staff told her they were doing everything possible to ensure his safety.

After the January 2003 padlock beating, Mrs. Minix wrote to St. Joseph Juvenile Magistrate Judge Jane Miller[1] and St. Joseph Juvenile Judge Peter J. Nemeth about Mr. Zick's situation and her concerns about his safety at the South

---

[1] The judge to whom this case is assigned is married to the former Magistrate Miller. There is no suggestion that Magistrate Miller would be called to testify as a witness (or even as a deponent in the case). Neither party suggests that Magistrate Miller has any knowledge of the facts of the case other than what was contained in Mrs. Minix's letter to her. Neither party has sought recusal of the judge to whom this case is assigned. Since all the information made known to Magistrate Miller is contained within the letter attached to Mrs. Minix's affidavit, the assigned judge sees nothing that would require recusal.

4

Bend Juvenile Facility. Judge Nemeth advised Governor Frank O'Bannon about concerns for the safety of Mr. Zick and others at the South Bend Juvenile Facility.

Around March 7, 2003, Mrs. Minix went to the Northeast Juvenile Facility for a prearranged meeting with Superintendent Phil Gibson to discuss her concerns about Mr. Zick's safety and security. Mrs. Minix was detained at the facility and the meeting never occurred. She never received any information on how to grieve Mr. Zick's beatings, mistreatment, failed medical care, or any other conditions he suffered while detained from autumn 2002 through May 7, 2003, when he was unexpectedly released on order from the Governor's office.

In this suit, filed in the St. Joseph Superior Court and removed to this court in October 2004, Mrs. Minix sues the Indiana Department of Correction and a variety of persons who work for the DOC. The complaint asserts federal claims on behalf of Mr. Zick, brought both by Mr. Zick individually and by Mrs. Minix as his natural guardian. The defendants, in their second reply brief, ask the court to remove Mrs. Minix in her role as guardian, since Mr. Zick is now an adult. *See* Mason v. Royal Indemnity Co., 35 F. Supp. 477, 480 (N.D. Ga. 1940), *aff'd on other grounds*, 123 F.2d 335 (5th Cir. 1941). Because the issue was first raised in a reply brief (leaving Mrs. Minix with no opportunity to respond) and because the relief sought is not necessary for the court to resolve the summary judgment motion (the only motion pending), the court declines the defendants' request.

The DOC permits juvenile offenders to submit grievances about incidents and concerns. DOC procedures ordinarily require that the grievance be filed

5

within two business days after the event giving rise to the grievance. The grievance process consists of several steps. The first step consists of the filing of a complaint; a staff member assigned to handle such matters addresses the complaint. An offender not satisfied with the response may proceed to the second step, which consists of an appeal through a written memorandum called a grievance. In Step 3, the offender may pursue his complaint to a three-member grievance committee. The next steps in the grievance process consist of appeal to the facility's superintendent or the superintendent's designee (Step 4), then to the regional director (who answers directly to the Commissioner of the DOC) or director's designee (Step 5).

Some matters are not grievable under DOC procedures, but offenders may submit grievances about danger from another offender, an attack by another offender, or lack of protection from such danger by facility staff. Such a grievance triggers an investigation and, if appropriate, separation of the offender from those who threaten him, punishment of one who has harmed the offender, and sanctions for a staff member who knowingly failed to protect an offender from a known threat or danger.

Mr. Zick never pursued a grievance that any other person had harmed him in any way, or that he was in danger from anyone, or that he wasn't being protected from danger. The only grievances Mr. Zick filed related to an officer's inappropriate relationship with a juvenile offender and a need for underwear, socks, and shirts.

II.

The defendants argue that they are entitled to a summary judgment dismissing Mr. Zick's federal claims without prejudice, *see* Ford v. Johnson, 362 F.3d 395 (7th Cir. 2004), because Mr. Zick did not avail himself of an available administrative remedy. Following dismissal of the federal claims, the defendants say, the court should remand Mrs. Minix's remaining state law claims to the county superior court. *See* 28 U.S.C. § 1367(c); Bean v. Wisconsin Bell, Inc., 366 F.3d 451, 456 (7th Cir. 2004).

Under the Prison Litigation Reform Act, a person incarcerated in a facility and adjudicated delinquent for violation of criminal law must exhaust any available administrative remedies before proceeding with suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a, h); Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion entails following the rules governing the administrative remedies. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). An administrative remedy is "available" if the administrative procedure has "'authority to take some action in response to a complaint.'" Larkin v. Galloway, 266 F.3d 718, 723 (7th Cir. 2001).

The plaintiffs present several reasons why they believe Mr. Zick's failure to grieve does not entitle the defendants to summary judgment. They don't dispute that Mr. Zick filed no grievances concerning his physical injuries or the failure to protect him.

7

A

First, the plaintiffs argue that administrative exhaustion is not required. Mrs. Minix, who brought the suit on behalf of her son, who was a minor when the suit was filed, wasn't a prisoner and so wasn't subject to the PLRA's exhaustion requirements. *See* Turner v. Wilkinson, 92 F. Supp. 697, 704 (S.D. Ohio 1999). There is no basis upon which Mrs. Minix has standing to assert the rights of Mr. Zick, who suffered the injuries alleged in the federal claims. Massey v. Helman, 196 F.3d 727, 739-742 (7th Cir. 1999).

B

Second, the plaintiffs argue that they exhausted their administrative remedies. Mrs. Minix sought to fulfill her obligations as the natural guardian of her minor son by trying to exhaust administrative remedies on his behalf. *See* IND. CODE § 29-3-8-3(2). Mrs. Minix says she went to several members of the DOC's staff complaining of the mistreatment of her son, and the staff had actual knowledge of Mr. Zick's need for medical assistance. Mrs. Minix then pursued the matter to the superintendent at various facilities, writing to South Bend Juvenile Correctional Facility superintendent Andrew Pazera and to Kelly Whitcomb at the Logansport Juvenile/Intake Diagnostic Facility. She arranged a meeting with Northeast Juvenile Facility superintendent Phil Gibson, though staff at that facility prevented the meeting from occurring. *See* Wilson v. Vannetta, 291 F.

8

Supp. 2d 811, 820 (N.D. Ind. 2003). Mrs. Minix then contacted Deputy DOC Commissioner Pam Cline and, eventually, the Governor.

In effect, the plaintiffs argue, Mrs. Minix went through most, if not all, of the grievance procedures set forth by the DOC. Indeed, she grieved all the way to the Governor's office. No additional administrative remedy remained for her or her son to pursue.

At bottom, a prisoner must comply with the administrative process made available to prisoners as it exists, not as it might have been written. Carroll v. Yates, 362 F.3d 984, 985 (7th Cir. 2004); Pozo v. McCaughtry, 286 F.3d at 1024-1025. While inconsequential variance from the prescribed process should not trump substance, Mrs. Minix's efforts were not directed to the proper people, did not contain the information needed, and did not issue within anything near the prescribed time. The court doesn't wish to demean Mrs. Minix's efforts on her son's behalf: she did what she could do. But her complaints about some things to some people—not the people designated by the grievance process—didn't inform anyone else or inform anyone at all about the other events giving rise to this suit. Further, her communications didn't comply with the general time constraints built into the grievance process, which allow investigation and corrective action while evidence and memories still are available. The summary judgment record would not allow any finding about how much time elapsed from an incident to Mrs. Minix reporting it to someone.

The plaintiffs haven't identified evidence from which a reasonable trier of fact could find that they exhausted available administrative remedies.

Building on that argument, the plaintiffs argue that informal resolution preferred by the DOC policy, Administrative Procedures Manual, p. 1, § II (grievance process is "not intended to supplant existing channels of communication and problem resolution"), further supports recognizing Mrs. Minix's efforts to exhaust. The policy states a preference for an informal resolution of conflict, the plaintiffs say, so the defendants should not be allowed to argue that informal resolution is not a recognized part of the offender grievance process.

There is, though, nothing in the summary judgment record to indicate that Mr. Zick attempted any informal resolution, and he is the person upon whom the Prison Litigation Reform Act placed the obligation to exhaust administrative remedies. For the reasons just discussed, Mrs. Minix's efforts cannot be said to have satisfied her son's obligation.

C

Third, the plaintiffs say they should be excused from exhaustion. They say the remedies under the grievance procedure provided no chance for adequate relief to the plaintiffs, for which they point to the ineffectiveness of Mrs. Minix's efforts (until she reached the Governor's office) as evidence. Added efforts to appeal, the plaintiffs say, would have been futile; the grievance procedure couldn't have produced any greater remedy than they achieved through Mrs. Minix's efforts.

10

Finally, they say, there was no meaningful access to the review procedures because the law made each juvenile facility superintendent Mr. Zick's guardian, and none of the superintendents complied with their guardianship duties to protect Mr. Zick's property rights.

 Again, the court cannot agree. Because the officials with responsibility of handling grievances had no chance to handle grievances about the events giving rise to this suit, no reasonable trier of fact could decide that exhaustion would have been futile. *See* McCoy v. Gilbert, 270 F.3d 503, 511 (7th Cir. 2002); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 536-37 (7th Cir. 1999). Nobody prevented Mr. Zick from grieving; indeed, he filed grievances concerning clothing needs and another instance of what he saw as official misconduct.

### D

 Fourth, the plaintiffs argue that if Mr. Zick didn't exhaust his administrative remedies, the fault lies with the defendants (or with some of the defendants) because the law made each juvenile facility superintendent Mr. Zick's guardian with the duty to protect his property rights, IND. CODE. § 29-3-8-3(2), including causes of action, Shvartman v. Apfel, 138 F.3d 1196, 1199 (7th Cir. 1998). Given Mr. Zick's emotional state (he was placed on suicide watch at some point), the plaintiffs say a genuine issue of material fact exists as to whether the responsibility for any failure to exhaust rests at the feet of the defendants rather than the plaintiffs. *See generally* Livingston v. Piskor, 215 F.R.D. 84, 87 (W.D.N.Y.

2003). The court cannot agree. The plaintiffs' argument would allow state law, which makes a custodian a guardian for some purposes, to overcome federal law, specifically, the Prison Litigation Reform Act, which requires persons adjudicated delinquent for criminal acts to exhaust available administrative remedies. The authority to override federal law lies beyond the reach of the Indiana legislature.

E

Fifth, the plaintiffs read the DOC's Administrative Procedures Manual as not including among grievable offenses events such as those addressed in their complaint; accordingly, they argue, there was no available administrative remedy for them to exhaust. The court reads the manual differently. The manual allows grievances concerning actions of employees, and nothing in the manual would exclude failure to protect (much less handcuffing offenders and subjecting them to beatings by other offenders) from that definition. The manual goes on to describe non-grievable matters in another section. The plaintiffs' argument could prevail if the DOC interpreted the manual as the plaintiffs do, but David Umberto's affidavit indicates that the DOC investigates grievances concerning failure to protect offenders. The grievance procedures do not exclude complaints based upon alleged failures to protect offenders.

F

Sixth, the plaintiffs argue that Mr. Zick complied with the grievance process and exhausted his administrative remedies pursuant to the process stated for

grieving in an emergency situation, which say that when confronted by "an emergency situation that presents a threat to the health, safety or life of an individual or threatens the disruption or orderly operation of the facility," ADMINISTRATIVE PROCEDURES MANUAL, § VI, ¶ 2, an offender is to "notify any staff member of the situation," who is to take immediate remedial action. The beatings of Mr. Zick that required medical care and surgical stitching, the plaintiffs argue, presented a threat to his health and safety, and several staff members were notified about those beatings.

This argument is unpersuasive. First, the plaintiffs don't identify which incidents threatened his health safety or life—a critical step, since this argument cannot forgive failure to exhaust available administrative remedies with respect to incidents that did not involve any emergency situation. Second, this case is, at bottom, a claim of failure to protect. The record contains no indication that any staff member who knew of Mr. Zick's injuries knew that a need to protect existed or that proper protection had not been afforded.

G

Finally, the plaintiffs argue that the DOC's formal grievance process, by giving an offender only 48 hours within which to file a grievance, is designed to ensure that exhaustion fails, thereby illegally depriving plaintiffs of their right to pursue a §1983 claim. *Compare* 28 C.F.R. §§ 542.10 to .19 (2005) (20 days to file); *see* Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (4 days too little). This

argument misapprehends the basis for the defendants' summary judgment. The defendants don't argue that Mr. Zick grieved too late; they argue that he didn't grieve at all. Nothing in the summary judgment record supports an inference that an inability to meet an unreasonable deadline (or more accurately, repeated inability to do so) caused Mr. Zick to not exhaust his administrative remedies.

### III.

The defendants raise other arguments, but they need not be reached because the exhaustion issue disposes of the federal claims. Mrs. Minix made heroic efforts to protect her son from what she understood was occurring within the DOC, and ultimately her son received an early release. For all the reasons already discussed, however, her efforts cannot be said to have satisfied Mr. Zick's obligation under the Prison Litigation Reform Act to exhaust available administrative remedies, and Mr. Zick did not satisfy that obligation either. Accordingly, Mr. Zick may not proceed on his federal constitutional claims under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516 (2002). The defendants are entitled to judgment of dismissal without prejudice. Because today's ruling dismisses the only federal claims in the suit, the court relinquishes its supplemental jurisdiction over Mrs. Minix's state law claims, *see, e.g.*, O'Grady v. Village of Libertyville, 304 F.3d 719 (7th Cir. 2002), and remands the case to the St. Joseph Superior Court, where an Indiana court may address claims brought under Indiana law against Indiana employees by an Indiana citizen.

For the foregoing reasons, the court GRANTS the defendants' partial summary judgment motion (Docket No.11), DISMISSES the federal claims WITHOUT PREJUDICE, and REMANDS the case to the St. Joseph Superior Court.

ENTERED:   July 27, 2005

/s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Chief Judge
United States District Court

cc:   S. Kenyon
      T. Quigley